COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Raphael and Lorish
Argued at Fairfax, Virginia


JONATHAN HALE, ET AL.

MEMORANDUM OPINION* BY
v.        Record No. 1389-24-4           JUDGE LISA M. LORISH
MARCH 17, 2026

JOSEPH CAUZZORT


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Rebecca J. Wade, Judge

Matthew A. Crist (Matthew A. Crist, PLLC, on briefs), for
appellants.

John Flood (BerlikLaw, LLC, on brief), for appellee.


Joseph Cauzzort brought a defamation action against Jonathan Hale and Jennifer

Chamberlain in connection with statements they made online regarding Cauzzort's efforts to

raise funds for beleaguered dogs in Ukraine.  The trial court rejected Hale and Chamberlain's

demurrer, which argued that they were immune under Virginia's anti-SLAPP statute, Code

§ 8.01-223.2, and that the complaint failed to allege sufficient facts.  Assuming without deciding

that the speech here addressed a matter of public concern, Cauzzort sufficiently alleged that Hale

and Chamberlain knew, or recklessly disregarded, the falsity of their allegations.  So we affirm

the judgment below.

BACKGROUND

In August 2022, Cauzzort brought a defamation suit arising out of a discussion on

Facebook.  Cauzzort, who "works primarily as a hair stylist," alleged that he owned two Biewer

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Terriers that he hoped to breed and show at dog competitions. As a member of the "small" "community of breeders and handlers" of these dogs, Cauzzort volunteered with the Biewer Breed Club of America in March 2022 to establish a GoFundMe fundraiser to benefit Ukrainian dog owners who were struggling due to the Russia-Ukraine war. The fundraiser included the following description:

> Hello everyone ,we all seen on television and internet that there is so much chaos in Ukraine, people are in basements with family , dogs and cats , people are afraid because they do not have the funds to have food for themself or the animals , so a group of Biewer friends are getting together to raise money to bring some of the dogs here to save them and find them a good home please help us to make this happen by donating with how ever much you are comfortable with , I myself might fly to Germany to pick them up , please share to all your friends because animals deserve to be saved also , thank you so much and I will make videos during this journey, thank you for your help and saving these beautiful little dogs[.]

Cauzzort's complaint described the subsequent Facebook discussion about the fundraiser. Chamberlain, one of the four initial defendants, posted, "Many questions- who is Joseph Cauzzort? Who's housing these dogs once inside USA? What deems a good home? Are these dogs already surrendered to a rescue working in those countries overseas? So much missing information." Cauzzort and Rebecca Eyke, who was also assisting with the fundraiser, responded to Chamberlain's comment, defending the fundraiser.

Hale, Chamberlain's spouse, later commented on the Facebook post about the fundraiser via an account with the name "Johnny Swass." Hale wrote, "So many red flags. I won't go into details, but this person is a fraudster." Another individual responded to this comment, asking Hale for his "proof." Hale replied:

> [P]utting someone's information out "for ALL to see it" is considering "doxing" and depending on where you live and what is being posted there may be certain legalities involved, I would implore you to educate yourself on the laws governing your state

- 2 -

> or territory before engaging, or requesting someone engage in such behavior.
>
> I delivered my opinion, it is based in fact, it is not open for debate.
> If you wish to know more, explore it yourself.  Have a great day.

The complaint then described the ongoing conversation and statements made by other defendants, including the claim that Cauzzort had been arrested several times and had moved approximately three dozen times.

The complaint also alleged that Chamberlain made further defamatory statements in a public Facebook exchange with another individual.  Chamberlain endorsed Hale's comment that Cauzzort was a fraudster, saying, "Ok then my OWN eyes lie to me."  She also messaged, "So no – my $ isn't going anywhere near him Because fraudulent individuals are truthful [laughing emoji]."  Later on, Chamberlain again commented, "I've seen it with my own eyes," allegedly referencing Cauzzort's being a "fraudster."

In the complaint, Cauzzort characterized these statements as false,[1] defamatory, and harmful to his reputation.  He also asserted that the statements were made "with malicious intent" and lacked any factual basis.  Cauzzort pleaded that Hale and Chamberlain, who also breed and show Biewer Terriers, made such knowingly false statements in an effort to diminish the fundraiser and "to harm his reputation and his ability to establish himself as a new breeder of Biewer Terriers and otherwise within the close-knit community of dog owners, breeders, and handlers for Biewer Terriers."

Hale and Chamberlain filed a counterclaim and demurrer in response.  In their demurrer, they claimed immunity under Code § 8.01-223.2 and, alternatively, that Cauzzort's complaint failed to "sufficiently allege[] facts that arise to actionable defamation."  Hale and Chamberlain

---

[1] Counsel for Hale and Chamberlain concedes that public records suggesting Cauzzort was a criminal were false.

specifically argued that they were immune because the public fundraiser constituted a matter of public concern. And even if they were not immune, they argued that Cauzzort failed to allege that they possessed the requisite intent for defamation. The trial court ultimately overruled the demurrer after a hearing on January 25, 2023, finding that the statements were not opinions nor matters of public concern.

Neither Hale, Chamberlain, nor their counsel appeared at the jury trial. The jury returned a verdict against Hale and Chamberlain, and the trial court issued its final order and judgment on July 10, 2024.[2] Hale and Chamberlain now appeal.

ANALYSIS

Hale and Chamberlain assign five errors that all concern whether the trial court erred in overruling their demurrer. Appellate courts "review a circuit court's judgment overruling a demurrer de novo." *Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022). "When reviewing such a judgment, we 'accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff.'" *Id.* (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). "Furthermore, we draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.*

At the outset, we note that Hale and Chamberlain demurred, arguing that they are immune from defamation under Virginia's anti-SLAPP statute, Code § 8.01-223.2. "Absolute privilege is an affirmative defense," which means that "'[i]n an action for defamation the defendant has the burden of proving, when the issue is properly raised, the presence of the circumstances for the existence of a privilege to publish the defamatory communication.'" *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 265 (2021) (quoting Restatement (Second)

---

[2] The other defendants were no longer parties to the case.

of Torts § 613(2) (A.L.I. 1977)). "[A]ffirmative defenses 'may not be raised in a demurrer, which tests only the facial validity of the allegations in a complaint rather than the validity of affirmative defenses.'" *Id.* at 264-65 (quoting *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 638 n.23 (2019)). Accordingly, a claim of immunity under the anti-SLAPP statute should be brought as an affirmative defense raised through a plea in bar and not through a demurrer. With that said, the Supreme Court has twice addressed the merits of privilege arguments raised by demurrer, and so we do the same. *See id.*; *Brooks-Buck v. Wahlstrom*, ___ Va. ___, ___ (Oct. 16, 2025) (underscoring that an affirmative defense should be raised in a plea in bar, not a demurrer, but "address[ing] the substance of the arguments" because of "the analytical similarity between a demurrer and a plea in bar relying solely upon the allegations of a complaint").

Turning to the merits, at the time relevant to this litigation,[3] Code § 8.01-223.2(A) provided immunity from "civil liability" for "a claim of defamation based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party." Rather than defining "matters of public concern," Code § 8.01-223.2 "tethers" its meaning to the First Amendment. *Rolofson v. Fraser*, 81 Va. App. 508, 527 (2024). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Id.* at 528 (quoting *Carey v. Throwe*, 957 F.3d 468, 475 (4th Cir. 2020)). "By contrast, if the speech at issue merely implicates a 'purely personal' topic, the First Amendment does not apply and our analysis comes to an end." *Id.* (quoting *Carey*, 957 F.3d at 475). Whether speech

---

[3] Effective July 1, 2023, Code § 8.01-223.2(A) was amended, as relevant here, to provide immunity from "tort liability" "if the tort claim is based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party." 2023 Va. Acts ch. 462. Code § 8.01-223.2(B) was also amended to exclude from immunity "any statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false." *Id.*

addresses a matter of public concern must be "resolved 'by examining the "content, form and context" of [the] speech,'" which is a "case-and fact-specific" inquiry. *Id.* (first quoting *Cromer v. Brown*, 88 F.3d 1315, 1325 (4th Cir. 1996); and then quoting *Campbell v. Galloway*, 483 F.3d 258, 269 (4th Cir. 2007)). Yet even if statements address a matter of public concern, there is no immunity for "any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false." Code § 8.01-223.2 (2020). This exception echoes the actual malice standard. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (defining a statement made with "actual malice" as one made "with knowledge that it was false or with reckless disregard of whether it was false or not").

Whether online statements about a fundraiser that are directed to a small group but accessible to all touch on a matter of public concern is a thorny question. On the other hand, it is easy to conclude that Cauzzort sufficiently alleged that Hale and Chamberlain knew or recklessly disregarded the falsity of their statements.[4] Thus, the best and narrowest way to resolve this appeal is to assume, without deciding, that the statements did regard matters of public concern. *See Alexandria Redevelopment & Hous. Auth. v. Walker*, 290 Va. 150, 156 (2015) (noting that

---

[4] Affirming for this reason, we do not address whether the trial court erred by not finding that Cauzzort was a public, or limited public, figure. Hale and Chamberlain waived this issue because they told the court it need not decide whether Cauzzort was a public figure. "A litigant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory,' or else such arguments are waived." *Amazon Logistics, Inc. v. Va. Emp. Comm'n*, 304 Va. 107, 114-15 (2025) (per curiam) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). But if Cauzzort were a public figure, as Hale and Chamberlain now argue, this would not excuse defamation in the presence of actual malice. *See Jordan v. Kollman*, 269 Va. 569, 576-77 (2005). And if he were not such a figure, our conclusion that the complaint pleaded that Hale and Chamberlain made false statements with reckless disregard for the truth is sufficient to cover the lower standard of negligence that would apply. *See Lewis v. Kei*, 281 Va. 715, 725 (2011) (explaining that a non-public-figure plaintiff must allege that a defendant "knew that the statement was false, or, believing that the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based"); *Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985) (same).

Virginia courts "strive to decide cases on the 'best and narrowest grounds available'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

At the demurrer stage, we determine "whether the factual allegations pled and the reasonable inferences drawn therefrom are sufficient to state a cause of action." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014) (quoting *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013)). We draw inferences in the light most favorable to Cauzzort as the plaintiff. *Schaecher v. Bouffault*, 290 Va. 83, 93 (2015). Cauzzort's complaint must have alleged that each "defamatory statement was made 'with "actual malice"— that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Jackson v. Hartig*, 274 Va. 219, 228 (2007) (quoting *Sullivan*, 376 U.S. at 279-80). A plaintiff must establish actual malice "by clear and convincing evidence." *Id.* (quoting *Jordan v. Kollman*, 269 Va. 569, 577 (2005)).

Opinions are "generally not actionable because such statements cannot be objectively characterized as true or false." *Jordan*, 269 Va. at 576. "Therefore, in evaluating a demurrer to a claim of defamation, a trial court 'must determine as a matter of law whether the allegedly defamatory statements contain provably false factual statements or are merely statements of opinion.'" *Lewis v. Kei*, 281 Va. 715, 725 (2011) (quoting *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47 (2009)). "When a statement is relative in nature and depends largely on a speaker's viewpoint, that statement is an expression of opinion. Factual statements made in support of an opinion, however, can form the basis for a defamation action." *Id.* (quoting *Hyland*, 277 Va. at 47). Finally, "[s]imply couching . . . statements in terms of opinion does not dispel [factual] implications." *Schaecher*, 290 Va. at 103 (alterations in original) (quoting *Raytheon Tech. Servs. Co. v. Hyland*, 273 Va. 292, 303 (2007)).

The Supreme Court recently concluded that a plaintiff successfully pleaded actual malice where "[t]he amended complaint did not *expressly allege* that [the defendants] knew that the statements at issue were false," but nevertheless alleged that the statements were made with "ill will" and that the defendants showed "extreme animosity" toward the plaintiff. *Brooks-Buck*, ___ Va. at ___ (emphasis added). "[R]ead as a whole," the complaint sufficiently alleged that the defendants "intentionally made false statements." *Id.* at ___. Alternatively, the allegations "impl[ied]" that the defendants "recklessly disregarded the falsity of their 'baseless' statements." *Id.* at ___. Therefore, the trial court properly overruled the demurrers. *Id.* at ___.

To start, we agree with Cauzzort that the statements at issue are not mere opinions. Hale commented, "So many red flags. I won't go into details, but this person is a fraudster." When another individual asked for "proof," he declined to give any and replied, "I delivered my opinion, it is based in fact, it is not open for debate. If you wish to know more, explore it yourself." For her part, Chamberlain messaged, "So no – my $ isn't going anywhere near him Because fraudulent individuals are truthful [laughing emoji]." The exchanges included other messages purporting to support the veracity of her statement. ("Ok then my OWN eyes lie to me"; and "I've seen it with my own eyes.") These statements do not suggest that Hale and Chamberlain simply believed Cauzzort was a "fraudster," but rather that he was, in fact, a "fraudster." In other words, their statements include "provably false factual statements" about Cauzzort. *See Lewis*, 281 Va. at 725 (quoting *Hyland*, 277 Va. at 47). Therefore, it is immaterial that the statements are framed as opinions. *See Schaecher*, 290 Va. at 103.

We also agree that—when inferences are made in Cauzzort's favor—the allegations pleaded actual malice. It is true that some of the allegations are mere conclusory recitations of law. For example, the complaint states, "[T]hese statements were made with malicious intent on the part of Defendants," and "Defendants made these statements knowing that they were false."

But the complaint also denied the truth of the supposed "facts" that Hale and Chamberlain relied on, suggesting that they were clearly baseless. This supports the inference that Hale and Chamberlain knew, or recklessly disregarded, the falsity of their statements. And the complaint alleged a motive—to exclude Cauzzort from the Biewer Terrier community.[5]

Because the complaint sufficiently alleged that the false statements were made with actual malice, even assuming the statements were about a matter of public concern, we affirm the trial court's decision to reject the demurrer.[6]

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[5] We reject the suggestion, made at oral argument, that no actual malice can lie unless the parties had some pre-existing relationship. It is true that pleading that the parties knew each other, and had information about each other, can support an inference that false statements were made with actual malice. But this is not the only way actual malice can be shown.

[6] Hale and Chamberlain have also argued that the trial court abused its discretion by failing to certify the transcript of the January 25, 2023 hearing on the demurrer. After they filed their notice of appeal, they filed a statement of facts in lieu of a transcript. Later, they filed a transcript of the hearing, noting that they were previously unaware that a transcript was available. The trial court refused to certify that transcript, finding that it was late under Rule 5A:8(a) and that the court lacked "authority to sign the transcript pursuant to Rule 5A:8(d)." The trial court did, however, certify the statement of facts with corrections following a review of the hearing transcript. This makes harmless any error the court made in not certifying the transcript. The complaint and demurrer are in the record before us, as well as a statement of facts about the hearing, so the court's refusal to certify the transcript did not prevent this Court from addressing the merits of this appeal.